UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHERRY A. NARDONE and <br> JOHN NARDONE <br> Plaintiffs <br><br> vs. <br><br> CITIMORTGAGE, INC. <br> Defendant | ) <br> ) <br> ) CIVIL ACTION <br> ) DOCKET NO. <br> ) <br> ) //CV11134 <br> ) <br> ) |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. The Plaintiffs are Sherry A. Nardone and John Nardone, husband and wife, of 7 Michael Street Tewksbury, Middlesex County, MA.

2. The Defendant is CitiMortgage, Inc. of 100 Technology Drive, O'Fallon, MO 63368

### STATEMENT OF FACTS

3. On September 26, 2005, Plaintiffs Sherry A. Nardone and John Nardone (Nardones) granted a mortgage to New Federal Mortgage Corp. to secure a note for $350,000.00 on the property located at 7 Michael Street, Tewksbury, MA, their principal place of residence. The Nardones hold title as tenants-by-the-entirety. Said mortgage was registered at the Middlesex North Registry District of the Land Court on Certificate of Title No. 37624, as Document No. 234391.

4. On the same day that the mortgage was given by the Nardones, the mortgage was allegedly assigned to CitiMortgage, Inc. (Lender) by the then-holder of the mortgage, New Federal Mortgage Corp. The assignment is defective as follows: (a) the notary does not indicate who appeared before her; and (b) the address states that the assignment is for the property located at 7 Michael Road, whereas the property address is 7 Michael Street. (Plaintiffs' Appendix: Exhibit A).

5. On September 10, 2009, the Nardones received correspondence from the Lender informing them that they may qualify for a Home Affordable Modification Trial Period Plan under the Home Affordable Modification Program (HAMP). (Plaintiffs' Appendix: Exhibit B).

6. After making application to the Lender for a loan modification under the HAMP program, the Nardones were provided a Home Affordable Modification Trial Period Plan effective October 1, 2009. (Plaintiffs' Appendix: Exhibit C). The payment under the trial modification plan was $1534.19.

7. From October 2009 through September 2010, the Nardones made payments under the trial modification plan in a timely manner. Specifically, they made the three trial period payments under the trial modification plan, and then, with no word from the Lender, continued to make payments of the trial amount.

8. After offering the Trial Period Plan, the Nardones did not hear from the Lender about whether or not they qualified for the HAMP Permanent Loan

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHERRY A. NARDONE and <br> JOHN NARDONE <br> Plaintiffs <br><br> vs. <br><br> CITIMORTGAGE, INC. <br> Defendant | CIVIL ACTION <br> DOCKET NO. <br><br> // CV 11134 |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. The Plaintiffs are Sherry A. Nardone and John Nardone, husband and wife, of 7 Michael Street Tewksbury, Middlesex County, MA.

2. The Defendant is CitiMortgage, Inc. of 100 Technology Drive, O'Fallon, MO 63368

### STATEMENT OF FACTS

3. On September 26, 2005, Plaintiffs Sherry A. Nardone and John Nardone (Nardones) granted a mortgage to New Federal Mortgage Corp. to secure a note for $350,000.00 on the property located at 7 Michael Street, Tewksbury, MA, their principal place of residence. The Nardones hold title as tenants-by-the-entirety. Said mortgage was registered at the Middlesex North Registry District of the Land Court on Certificate of Title No. 37624, as Document No. 234391.

4. On the same day that the mortgage was given by the Nardones, the mortgage was allegedly assigned to CitiMortgage, Inc. (Lender) by the then-holder of the mortgage, New Federal Mortgage Corp. The assignment is defective as follows: (a) the notary does not indicate who appeared before her; and (b) the address states that the assignment is for the property located at 7 Michael Road, whereas the property address is 7 Michael Street. (Plaintiffs' Appendix: Exhibit A).

5. On September 10, 2009, the Nardones received correspondence from the Lender informing them that they may qualify for a Home Affordable Modification Trial Period Plan under the Home Affordable Modification Program (HAMP). (Plaintiffs' Appendix: Exhibit B).

6. After making application to the Lender for a loan modification under the HAMP program, the Nardones were provided a Home Affordable Modification Trial Period Plan effective October 1, 2009. (Plaintiffs' Appendix: Exhibit C). The payment under the trial modification plan was $1534.19.

7. From October 2009 through September 2010, the Nardones made payments under the trial modification plan in a timely manner. Specifically, they made the three trial period payments under the trial modification plan, and then, with no word from the Lender, continued to make payments of the trial amount.

8. After offering the Trial Period Plan, the Nardones did not hear from the Lender about whether or not they qualified for the HAMP Permanent Loan Modification.

9. Under HAMP Guidelines, the Lender has ten business days to provide the borrower notice after determination that the borrower is not eligible for a permanent modification. (Making Home Affordable Handbook Vol. 3.2, Chapter II, Section 2.3.2).

10. On September 25, 2010, the Nardones received correspondence from CitiMortgage, including an application for a CitiMortgage Loan Modification. (Plaintiffs' Appendix: Exhibit D).

11. The Nardones submitted all requested information to the Lender by facsimile on October 12, 2010. (Plaintiffs' Appendix: Exhibit E).

12. On October 25, 2010, the Nardones checked the CitiMortgage website and saw that as of October 20, 2010, their mortgage modification was approved at the $1534.19 per month amount and that a modification package was being forwarded to them. This was the amount of the HAMP loan modification trial period payment and is evidence of the fact that the Nardones had been approved by the Lender for a permanent modification under the HAMP program. (Plaintiffs' Appendix: Exhibit F).

13. On October 18, 2010, the Nardones received correspondence from the Lender that they were eligible for an Alternative Modification from CitiMortgage. They were required, under the terms of the Modification to pay a "down payment" of $654.88. Further, under the terms of the CitiMortgage Alternative Modification, the monthly mortgage payment was to be $1577.46. (Plaintiffs' Appendix: Exhibit G).

14. The Nardones forwarded all documents, via fedex to the Lender. Further, Ms. Nardone received approval from the Lender to forward their payments on the third of the month, due to the Nardones' financial situation.

22. On December 29, 2010, Ms. Nardone called the Lender and spent 25 minutes on the telephone. The provided the same information and refused to take the payment.

23. On January 3, 2011, Ms. Nardone called the Lender and spent 1.5 hours on the telephone. The Lender's representative indicated that the modification was complete and should have been in the computer by December 31, 2010. However, the modification was still not in the system and the Lender's representative informed Ms. Nardone that he could not take the payment.

24. On January 10, 2011, Ms. Nardone called the Lender and spent 15 minutes on the telephone. Again she was told that the modification was not in the system and they could not take the payment.

25. On January 14, 2011, Ms. Nardone called the Lender and spent 20 minutes on the telephone. She was told that they could not take her payment as the modification was not in the system and that someone would call her back. She never received a return call.

26. On January 18, 2011, Ms. Nardone called the Lender and spent 20 minutes on the telephone. Again she was told that they could not take the payment and someone would call her. She received no return call.

27. On January 26, 2011, Ms. Nardone called the Lender and spent 25 minutes on the telephone. She was provided the same information about the payment and that someone would call. She received no return call.

28. On February 3, 2011, Ms. Nardone called the Lender and spent 20 minutes on the telephone. She received the same information as all previous calls. She received no return call.

29. On February 10, 2011, Ms. Nardone called the Lender and spent 30 minutes on the telephone. She was told the same information as all previous calls and again was told that she was in no danger of losing her home. She received no return call.

30. On February 11, 2011, the Nardones received correspondence from CitiMortgage, offering them a Fannie Mae Loan Modification. The trial payments were now $2,263.92, which was only $100.00 less than their original mortgage payment. (Plaintiffs' Appendix: Exhibit J).

31. On February 15, 2011, Ms. Nardone called the Lender and spent 25 minutes on the telephone. She again requested that they take the payment from the CitiMortgage Alternative Loan Modification, but again

they refused, stated it was not in the system. Again she was promised a return call and received none.

32. On February 25, 2011, Ms. Nardone called the Lender and spent 15 minutes on the telephone. She received the same information as all previous calls and no return telephone call.

33. On March 1, 2011, Ms. Nardone called the Lender and spent 20 minutes on the telephone. She received the same information and no return call.

34. On March 10, 2011, Ms. Nardone called the Lender and spent 15 minutes on the telephone. She received the same information and no return call.

35. On March 15, 2011, the Nardones called the Lender and spent 45 minutes on the telephone. The Lender's representative said that the modification was now in the computer, but was in default. He also informed the Nardones that there was now a new modification at the $2,263.92 monthly rate. They were told that the loan modification team would call. They received no call.

36. On March 25, 2011, Ms. Nardone emailed the Lender at its website. She did not receive a reply. (Plaintiffs' Appendix: Exhibit K).

37. On March 31, 2011, Ms. Nardone conducted an "instant chat" with the Lender on its website. She was informed that because she had made no payments on the Alternative Modification (which she had attempted to do for three months) she would not be able to receive that modification. Further she was told that the Lender was not responsible for any misinformation she had previously received. (Plaintiffs' Appendix: Exhibit L).

38. On April 4, 2011, the Nardones called the Lender and spent 20 minutes on the telephone. The Lender's representative gave the Nardones a name and number to call. Ms. Nardone called and left a message. She received no return call.

39. On May 26, 2011, Ms. Nardone conducted an "instant chat" with the Lender on its website. Ms. Nardone was told that she was no longer eligible for HAMP but that there may be other programs for which she was eligible. She was told that the Alternative Modification had been defaulted. (Plaintiffs' Appendix: Exhibit M).

40. This information was provided despite the fact that the Nardones were never informed in writing about their lack of qualification for HAMP, as required by the Guidelines and were not in default of the Alternative Modification through any fault of their own.

41. On or after May 25, 2011, the Nardones received a Notice of Intent to Foreclose from Harmon Law Offices, on behalf of the Lender. Said notice included information that Harmon Law Offices may be able to assist them in a loan modification.

42. On May 31, 2011, Ms. Nardone called Harmon Law Offices and was told that they no longer assisted in loan modifications. She was told to call the Lender.

43. On May 31, 2011, Ms. Nardone called the Lender and was told that someone from the modification team would call them back in 24 hours. She received no return call until June 7, 2011.

44. In the June 7, 2011 call, the Lender informed Ms. Nardone that she would have to pay one-half of the overdue balance of $65,894.40 and start a payment plan or her home would be foreclosed upon on June 29, 2011.

45. Each time that the Nardones telephoned the Lender they also went on-line and could see that the Alternative Modification had been accepted and could see the payment amount. However, the Lender and its representatives claimed that this information was not available to them.

46. The foreclosure of the Nardone Property is scheduled for June 29, 2011 at 11:00 a.m. (Plaintiffs' Appendix: Exhibit N).

## COUNT I
## (STANDING)

47. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 46 above, and hereby incorporate them by reference as if fully set forth herein.

48. Based on the fact that (a) the notary public did not indicate the name of any person who was before her to sign the document, thus making the assignment non-binding under Mass. Gen. Law ch. 183 s. 54B, and based on the fact that (b) the address for the property was incorrect in the assignment and different than stated in the mortgage, Plaintiffs allege that the assignment from the original mortgage holder to CitiMortgage was ineffective as a matter of law.

49. As the assignment to CitiMortgage was ineffective, CitiMortgage has no standing to bring foreclosure proceedings under Mass. Gen. Law ch. 244 s. 14, as it is not the present holder of the mortgage, which is required by statute for the foreclosure to proceed.

## COUNT II
## (EQUITABLE RELIEF)

50. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 46 above, and hereby incorporate them by reference as if fully set forth herein.

51. Plaintiffs have demonstrated a substantial likelihood of success on the merits.

52. There is a significant risk of harm to the Plaintiffs if the injunctive relief is not issued.

53. There is a favorable balance of the hardships in the Plaintiffs' favor.

54. There is a lack of friction between the injunction and the public interest.

55. CitiMortgage is a participating lender as defined by the HAMP Guidelines.

56. Under the Making Home Affordable Guidelines Vol. 3.2, the lender must notify the borrower in writing of its decision regarding a permanent loan modification. Further, under the HAMP Guidelines, the Lender is not permitted to conduct a foreclosure sale while the borrower is under review for a HAMP loan modification.

57. Defendant has yet to notify the borrower of its decision regarding a permanent loan modification under the HAMP program, and is therefore still under review.

58. Further, while its HAMP notification was still pending, the Defendant offered the Plaintiffs a modification under the CitiMortgage Alternative Loan Modification Program.

59. Plaintiffs tendered and the Defendants accepted a down payment for said loan modification program, however subsequent to the payment of the down payment, the Defendant refused to accept payments from the Plaintiffs, causing them to default under the Alternative Loan Modification Program.

60. Further, the Defendant, after causing the Plaintiffs' default under the Alternative Modification Program, and failing to complete the review of Plaintiffs' application for a permanent loan modification under the HAMP program, offered the Plaintiffs a third loan modification at a much higher rate than the first two modifications.

61. During the entire time that the Plaintiffs contacted the Defendant, the

Defendant represented that the Plaintiffs' property would not be foreclosed upon.

62. Despite said representation, the Defendant has initiated foreclosure proceedings.

## COUNT III
## (NEGLIGENCE)

63. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46, above, and hereby incorporate them by reference as if fully set forth herein.

64. Defendant, as a participating lender/servicer in the HAMP program, owes a duty to the Plaintiffs to solicit Plaintiffs for modification and/or complete the modification review process on the Plaintiffs' modification application prior to a foreclosure on the Plaintiffs' Property. Further, the Defendant is barred from conducting a foreclosure sale while the borrower is under review for a HAMP loan modification.

65. Defendants have breached their duty to Plaintiffs under the terms of the HAMP Guidelines by seeking to conduct a foreclosure sale while the Plaintiffs' HAMP modification application is still under review..

66. Further, Defendant, as a participating lender/servicer in the HAMP program, has a duty to offer alternatives to HAMP loan modification prior to foreclosure.

67. Defendant has failed to offer Plaintiffs any meaningful alternative to the HAMP program, in breach of the HAMP Guidelines.

68. The breach of duty by the Defendant is the direct and proximate cause of the Plaintiffs' damage.

69. Plaintiffs have been damaged by the breach of duty by the Defendant.

## COUNT IV
## BREACH OF CONTRACT

70. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46, above, and hereby incorporate them by reference as if fully set forth herein.

71. Plaintiffs were solicited for a HAMP loan modification by Defendant.

72. Plaintiffs accepted the offer and compiled and forwarded a HAMP loan modification package to Defendant in a timely manner. Said compilation cost the Plaintiffs in terms of time and money and expectation.

73. Defendant received Plaintiffs' HAMP loan modification package and stated that it was under review.

74. After review, the Defendant offered the Plaintiffs a HAMP Trial Modification Plan. Plaintiffs accepted the terms of the Trial Modification Plan. This offer and acceptance constituted a contract between the Plaintiff and Defendant.

75. Under the terms of the offer by Defendant to enter into a HAMP trial modification and upon successful completion of three payments and a successful review of financial information by Defendant, Plaintiffs were to receive a permanent HAMP modification, according to the terms of the contract.

76. Though the Plaintiffs performed all conditions precedent to the contract, the Defendant failed to provide a permanent loan modification to the Plaintiffs. In fact, the Defendants failed to perform under the terms of the contract.

77. As a result of the failure of the Defendant to perform under the terms of several contracts with the Plaintiffs, the Plaintiffs have been damaged.

78. Plaintiffs are qualified borrowers under the HAMP guidelines.

79. Said solicitations by Defendant constitute offers, under common law contract law.

80. Plaintiffs accepted the offers by compiling all necessary information and submitting the loan application for modification review, as offered by the Defendant.

81. The time, money and expectation of the Plaintiffs constitute valuable consideration.

## COUNT V
## (GOOD FAITH AND FAIR DEALING)

82. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46, above, and hereby incorporate them by reference as if fully set forth herein.

83. The Defendant formed two contracts with the Plaintiffs. The first contract occurred when Defendant solicited the Plaintiffs for a HAMP loan modification, offered the Defendants a trial modification and then failed to take any action after the Plaintiffs completed all conditions precedent to the formation of the contract. The second contract occurred when the Defendant offered the Plaintiffs an Alternative Loan Modification, accepted a down payment, provided the terms and conditions of the contract and failed to accept payment.

84. The Defendant breached its obligation of good faith and fair dealing, which is implied in every Massachusetts contract, with the Plaintiffs, by failing to complete the terms of either contract with the Plaintiffs.

## COUNT VI
### (UNJUST ENRICHMENT)

85. The Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 46, above, and hereby incorporate them by reference as if fully set forth herein.

86. The actions of the Defendant constitute unjust enrichment at the expense of the Plaintiffs. Not only has the Defendant received payments from the Plaintiffs, including the down payment for the loan modification, which has not been applied to Plaintiffs' account, but has failed to offer Plaintiffs a permanent loan modification, thus depriving Plaintiffs of the value of their home.

## COUNT VII
### (EMOTIONAL DISTRESS)

87. The Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 46, above, and hereby incorporate them by reference as if fully set forth herein.

88. The Defendant intended to inflict emotional distress or was reckless in their infliction of emotional distress or knew or should have known that emotional distress was the likely result of their conduct.

89. The actions of the Defendant were the direct and proximate cause of the Plaintiffs' emotional distress.

90. The emotional distress suffered by the Plaintiffs was and is severe.

WHEREFORE, Plaintiffs request that judgment enter for the Plaintiffs on all counts in the Plaintiffs' complaint and request further as follows:

(a) a preliminary and permanent injunction, enjoining the Defendant from conducting a foreclosure sale on the Property of the Plaintiffs;
(b) actual damages to be determined by this court at trial;
(c) attorneys fees and court costs.

Dated: June 24, 2011

Respectfully submitted,
SHERRY A. AND JOHN NARDONE
By Their Attorney,

Helene Gerstle
84 Rowe Street
Newton, MA  02466
617 244 7300
BBO#190100
gersatty@aol.com

## VERIFICATION OF COMPLAINT

We, Sherry A. Nardone and John Nardone are the Plaintiffs in this matter. We have read the above complain and hereby swear and aver that all the material facts in this complaint are true to the best of our knowledge and no material facts have been omitted from the complaint.

Dated:

John Nardone

Sherry A. Nardone